**WESTERN REFINING YORKTOWN, INC., f/k/a Giant Yorktown, Inc., Plaintiff,**

v.

**BP CORPORATION NORTH AMERICA INC., and BP Products North America, Inc., Defendants.**

**Civil Action No. 4:08cv118.**

United States District Court, E.D. Virginia, Newport News Division.

May 22, 2009.

Anne E. Lynch, Michael D. Goodstein, Philip C. Hunsucker, Gary A. Bryant, for Plaintiff.

Damon W. Wright, Douglas H. Green, Lowell M. Rothschild, Kristan B. Burch, for Defendant.

## OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is before the Court on Defendants' Rule 12(b)(3) motion to dismiss or transfer venue and Rule 12(b)(6) motion to dismiss. The Court also has before it Plaintiff's associated motion for leave to file a response exceeding the page limit established by Local Rule, or in the alternative, motion for leave to file a conforming response. Defendants' motions contend that: (1) the forum selection clause in the contract at issue mandates that the federal or state courts in Cook County, Illinois, are the *exclusive* jurisdictions for

litigating the instant dispute; (2) Plaintiff's claims are time-barred and should be dismissed as Plaintiff failed to incur the requisite level of losses within the contractual limitations period; and (3) Plaintiff failed to plead facts sufficient to allege how it came to possess rights under the contract before the Court. After examining the motions and well-developed briefs, the Court finds that oral argument is unnecessary as the facts and legal contentions are adequately presented, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth in detail below, Defendants' motions are **DENIED**. Plaintiff's associated motion to file a conforming brief is **GRANTED**.

## I. Factual & Procedural Background

The instant dispute arises out of an Asset Purchase Agreement (the "Agreement") entered into between Defendants, BP Corporation North America Inc. and BP Products North America, Inc. (collectively "BP"), seller, and Giant Industries, Inc. ("Giant Industries"), buyer, for the purchase of a fuel refinery located in Yorktown, Virginia. (Compl.¶¶ 1, 26, Dkt. No. 1.) Shortly after the Agreement was entered and before the closing date, Giant Yorktown, Inc. ("Giant Yorktown") was incorporated as a fully owned subsidiary of Giant Industries, and Giant Industries assigned its rights under the Agreement to Giant Yorktown. (Id. ¶¶ 26–29.) In conjunction with such assignment, Giant Industries "guaranteed performance of the Agreement in a manner consistent with the requirements of the Agreement." (Id. ¶ 28.) The instant suit was filed by "Western Refining Yorktown, Inc., f/k/a Giant Yorktown, Inc.,"[1] the current owner and operator of the Yorktown refinery. (Id. at 1.)

Plaintiff's Complaint alleges breach of contract and seeks specific performance and declaratory relief based on Defendants' refusal to indemnify Plaintiff for clean-up costs necessitated by environmental contamination occurring *prior to* Defendants' sale of the refinery. (Id. ¶ 1.) In short, Plaintiff contends that the Agreement includes indemnification provisions requiring Defendants (sellers) to reimburse Plaintiff for a portion of environmental remediation costs that Plaintiff incurs as a result of contamination occurring during Defendants' ownership of the Yorktown refinery. (Id. ¶¶ 46–47.) The maximum indemnification Plaintiff can recover pursuant to the Agreement is $35,000,000, and Defendants are not obligated to indemnify Plaintiff for the first $5,000,000 in environmental remediation. (Id. ¶¶ 40–41.)

Defendants do not dispute the majority of the facts asserted in the Complaint, including the fact that the Agreement contains generally enforceable environmental indemnification provisions. It is further undisputed that Plaintiff purported to assert a claim for indemnification, via letter, within the Agreement's two-year limitations period. (Id. ¶ 46.) However, as the face of such letter, as well as future notice letters sent to Defendants, establish that

---

1. Although not relied upon by the Court for the purpose of ruling on the motion to dismiss, as way of background, BP alleges that, in May of 2007, Western Refining, Inc. ("Western Refining") acquired Giant Industries through a stock purchase. After such acquisition, Giant Yorktown, now a wholly owned subsidiary of Western Refining, allegedly changed its name to Western Refining Yorktown, Inc. ("Western Refining Yorktown"). The Complaint does not set forth such facts regarding Western Refining's acquisition of Giant Industries or Giant Yorktown's name change, but instead indicates that Plaintiff stands in Giant Industries shoes and identifies Plaintiff as "Western Refining Yorktown, Inc., f/k/a Giant Yorktown, Inc." (Compl. at 1.)

Plaintiff did not incur $5,000,000 in environmental remediation losses within two-years of closing, Defendants assert that the claims in the Complaint are time-barred. (PL Response Brief, Exs. 1(D) and 1(E), Dkt. No. 17.)

In addition to the limitations claim, Defendants challenge the instant action based on the Agreement's forum selection clause and its provision regarding the assignability or transferability of rights under the Agreement. In response to Defendants' motion to transfer venue or to dismiss the instant action, Plaintiff filed a brief in opposition, and Defendants thereafter filed a reply brief. Accordingly, this matter is ripe for review.

## II. Standard of Review

### A. Rule 12(b)(3)

A motion filed pursuant to Federal Rule of Civil Procedure 12(b)(3) is the proper procedural vehicle for seeking dismissal based on a forum selection clause. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir.2006). When ruling on a 12(b)(3) motion, "the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis," and the court can therefore consider evidence outside the pleadings. *Id.* at 549–50. Although a mandatory/exclusive forum selection clause renders venue improper in non-designated districts, district courts retain discretion under 28 U.S.C. § 1406 to transfer a case filed in the wrong forum, rather than dismiss it, if such a transfer is in "the interest of justice." *The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F.Supp.2d 602, 611 (E.D.Va.2008).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted."

Fed.R.Civ.P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000); *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir.2005) (indicating that a district court must accept as true all well-pleaded allegations and draw all reasonable inferences from the facts in the plaintiff's favor). Although the truth of the facts alleged is assumed, and reasonable inferences are drawn in the plaintiff's favor, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets*, 213 F.3d at 180. Ultimately, a complaint is sufficient if it provides the defendant sufficient notice of both what the claim is and the grounds on which the claim rests, such that the plaintiff "raise[s] a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555, 127 S.Ct. 1955.

Pursuant to Rule 12(d), if matters outside the pleadings are submitted in conjunction with, or in opposition to, a 12(b)(6) motion the court must either exclude such materials from consideration or convert the motion into a motion for summary judgment. Fed.R.Civ.P. 12(d). If the motion is converted, the court must afford the

parties a reasonable opportunity to present additional pertinent materials. *Id.* The prohibition on considering matters outside the pleadings does not apply to documents expressly relied on in a complaint.[2] *See Lorenzo v. Rumsfeld,* 456 F.Supp.2d 731, 734 (E.D.Va.2006) (citing *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir.1999)) ("[A] court can consider documents outside of the pleadings, without converting the motion to one for summary judgment, so long as the documents are integral to and explicitly relied on in the complaint."); *Davis v. George Mason Univ.,* 395 F.Supp.2d 331, 335 (E.D.Va. 2005) (quoting *Gasner v. County Dinwiddie,* 162 F.R.D. 280, 282 (E.D.Va.1995)) ("In the Eastern District of Virginia, 'when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.' ").

### III. Discussion

Defendants' motions challenge Plaintiff's Complaint in three respects. First, Defendants seek dismissal or transfer of this case pursuant to the forum selection clause in the Agreement.[3] Second, Defendants argue that even if venue is proper in this Court, Plaintiff's claims are time-barred and should be dismissed as Plaintiff failed to incur environmental remediation losses exceeding the contractual threshold within the contractual limitations period. Third, Defendants argue that as a result of Western Refining's acquisition of Giant Industries, Plaintiff failed to allege, and cannot allege, a right to indemnification under the Agreement. As acknowledged in Defendants' reply brief, the parties agree as to the standard of review, the fact that Illinois law governs the substantive aspects of this dispute, and the applicable Illinois law governing contract interpretation. Although the parties agree to the applicable legal standards, they disagree regarding the proper interpretation of several key contract provisions. In interpreting such provisions, the Court recognizes that both buyer and seller were "represented by counsel in connection with th[e] Agreement" and that the language contained therein was chosen by the parties "to express their mutual intent." (Def. Mo. to Dismiss Brief, Ex. 1 §§ 31, 33, Dkt. No. 11) (hereinafter "Agreement § —"). Strict construction against the drafter is therefore inapplicable. (*Id.*) For the reasons discussed in detail below, Defendants' motions are denied on all grounds.

### A. Contract Interpretation Under Illinois Law

The parties agree that, pursuant to the Agreement's choice-of-law provision, Illinois law governs the substantive aspects of this contract dispute.[4] Under Illi-

---

**2.** Here, the Court does not convert the motion and therefore does not consider the Declaration of Kim Bullerdick, submitted by Plaintiff. The Court does, however, consider the disputed contract and associated documents that are referenced in the Complaint and properly before the Court.

**3.** The question of whether the forum selection clause is valid and enforceable is not before the Court. Rather, the only issue raised by the parties is the proper interpretation of such clause.

**4.** "A federal court sitting in diversity must apply the choice of law rules of the forum state. Since the action was filed in the Eastern District of Virginia, Virginia's choice of law rules apply. Virginia gives effect to parties' choice of law in a contract unless circumstances show a fraudulent purpose. There being no fraudulent purposes shown [this Court] give[s] effect to the parties' choice to have [Illinois] law apply to the contract." *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.,* 892 F.2d 355, 357–58 (4th Cir.1989) (citations omitted).

nois law, a court presumes that all contract provisions were purposefully inserted and endeavors to give effect to the language employed such that the contract is not interpreted "in a way that would nullify its provisions or render them meaningless." *First Bank & Trust Co. of Ill. v. Orland Hills,* 338 Ill.App.3d 35, 272 Ill.Dec. 485, 787 N.E.2d 300, 305 (2003); *see Martindell v. Lake Shore Nat'l Bank,* 15 Ill.2d 272, 154 N.E.2d 683, 689 (1958) ("[I]t will be presumed that everything in the contract was inserted deliberately and for a purpose."). When contract interpretation disputes arise, "it is fundamental that the court adopt a construction of the contract that is reasonable rather than that which would produce an irrational or absurd result." *Village of Creve Coeur v. Fletcher,* 187 Ill.App.3d 116, 135 Ill.Dec. 88, 543 N.E.2d 323, 324 (1989); *see also GNB Battery Techs. v. Gould, Inc.,* 65 F.3d 615, 622 (7th Cir.1995) ("A contractual interpretation that gives *reasonable meaning* to all of the terms in an agreement is preferable to an interpretation which gives no effect to some terms.") (emphasis added). The "primary objective" in interpreting a contract is to "give effect to the intent of the parties," and to do so, courts must "initially look to the language of the contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart,* 226 Ill.2d 208, 314 Ill.Dec. 133, 874 N.E.2d 43, 58 (2007). "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Id.*

■ Considering the contract as a whole and endeavoring not to derive the parties' intent "from detached portions of [the] contract or from any clause or provision standing by itself," the Court must first determine whether ambiguity exits. *Id.* A contract provision "is not rendered ambiguous merely because the parties do not agree on its meaning," rather, ambiguity exists if "the language employed is susceptible to more than one reasonable meaning or [is] obscure in meaning through indefiniteness of expression." *Platt v. Gateway Intern. Motorsports Corp.,* 351 Ill.App.3d 326, 286 Ill.Dec. 222, 813 N.E.2d 279, 283 (2004). "[P]ut another way, a contract is ambiguous only if both parties were reasonable in adopting their different interpretations of the contract." *Murphy v. Keystone Steel & Wire Co., a Div. of Keystone Consol. Indus.,* 61 F.3d 560, 565 (7th Cir.1995). The determination of whether ambiguity exists is a question of law. *Quake Constr., Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990, 994 (1990). Only after determining that, as a matter of law, a contract is ambiguous should a court consider extrinsic evidence outside the language of the contract to determine the parties' intent. *Id.*

### B. Venue is Not Improper in the Eastern District of Virginia

■ The parties agree that they are bound by the venue/jurisdiction clause in the Agreement. However, they disagree as to the proper interpretation of such clause. Defendants contend that such clause is exclusive and operates to make venue proper *only in* the state and federal courts located in Cook County, Illinois.[5]

---

**5.** Defendants do not otherwise challenge the propriety of this case proceeding before this Court, and appear to acknowledge that *but for* the forum selection clause, this Court has jurisdiction and that venue in the Eastern

District of Virginia is not improper. Thus, Defendants do not argue that this case should be transferred based on convenience and justice.

Plaintiff contends that the clause is permissive and operates to make venue proper in the state and federal courts located in Cook County, *in addition* to other courts where venue and jurisdiction are otherwise appropriate. The disputed contract provision, with heading, states:

**21. GOVERNING LAW: SUBMISSION TO JURISDICTION.**[6] This Agreement and the obligations of the parties hereunder shall be governed by and construed and enforced in accordance with the substantive and procedural laws of the State of Illinois, without regard to rules on choice of law. Any action to enforce the terms hereof may be properly venued in, and shall be brought in, the federal or state courts located in Cook County in the State of Illinois on a nonexclusive basis. Each party hereto agrees that it shall submit to the jurisdiction of such courts for purposes of actions to enforce the terms of this Agreement.

(Agreement § 21.)

The crux of the dispute surrounding the clause set forth above is the interpretation of the second sentence, which begins with permissive language—*"may* be properly venued in,"—followed by mandatory language—*"shall* be brought in"—and concludes with permissive language—"on a *non-exclusive* basis." (*Id.*) If, for example, the end of the disputed sentence is eliminated, the forum selection clause would appear to be mandatory, reading: "Any action to enforce the terms hereof may be properly venued in, and shall be brought in, the federal or state courts located in Cook County in the State of Illinois."

Such altered provision still includes both permissive language regarding venue—may—and mandatory language—shall—but would likely be construed as mandatory as the use of the word "shall," without other terms modifying its meaning, suggests a mandate that suit must be filed in *either* the state or federal courts in Cook County.[7] *See City of Chicago Heights v. Crotty*, 287 Ill.App.3d 883, 223 Ill.Dec. 227, 679 N.E.2d 412, 413 (1997) (quoting Black's Law Dictionary 1233 (5th ed.1979)) (noting that in defining "shall," Black's Law Dictionary states that: "[a]s used in statutes, contracts or the like, this word is generally imperative or mandatory."); *Calanca v. D & S Mfg. Co.*, 157 Ill.App.3d 85, 109 Ill.Dec. 400, 510 N.E.2d 21, 22–23 (1987) ("Case law has construed the words 'shall' and 'must,' in a forum selection clause, to mean that the stated forum is exclusive."); *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761–62 (7th Cir.2006) (indicating that "under either federal or Illinois law, forum selection clauses are valid and enforceable" and that there was no ambiguity regarding the *exclusive forum* mandated by the contract language: "Jurisdiction and venue over any disputes arising out of this agreement *shall* be proper *only in* the federal or state courts in Dallas County, Texas") (emphasis added).

At the other end of the spectrum of possibilities, if the words "shall be brought in" are eliminated from the disputed sentence, the forum selection clause would clearly be permissive, reading: "Any action to enforce the terms hereof may be properly venued in the federal or state

---

**6.** Section 28 of the Agreement, titled *"HEADINGS"* states: "The section and paragraph headings contained in this Agreement are for reference purposes only, and shall not in any way affect the meaning or interpretation of this Agreement." (Agreement § 28.)

**7.** Such clause, without the use of the term "non-exclusive basis," still unquestionably indicates that both state and federal courts in Cook County are, at the very least, permissible *options.*

courts located in Cook County in the State of Illinois on a non-exclusive basis." Such altered provision is plainly permissive since not only is the operative word in the first part of the sentence the permissive word "may," but the end of the sentence indicates that the named jurisdictions are "non-exclusive." *See Trailer Leasing Co. v. Rush Trucking Corp.,* No. 97 C 8079, 1998 WL 160965, at *2 (N.D.Ill. Mar.31, 1998) (unpublished) (finding that the forum selection clause in a lease indicating that it "may be enforced" in Cook County "is really nothing more than a permissive indication of the [sic] where the lease agreements *may be enforced* "); *see also Saxena v. Virtualabs, Inc.,* No. 01 C 9905, 2002 WL 992636, at * 2 (N.D.Ill. May 15, 2002) (unpublished) (applying Ohio law) ("[A] permissive forum selection clause evidences the parties' intent that the chosen state is a possible, but not the sole, arena in which a suit can be filed" and therefore such permissive clauses "present no impediment to jurisdiction or venue in a forum other than the one specified in the agreement.").

Notwithstanding Defendants' characterization to the contrary, the disputed clause in its unaltered form, including both the mandatory language "shall be filed in," and the permissive language "may be properly venued in" and "on a non-exclusive basis," is anything but "clear." At first blush it appears contradictory. Defendants maintain that the phrase "shall be brought in" necessarily creates an exclusive forum in Cook County, Illinois, and that the use of the phrase "on a non-exclusive basis" merely modifies/clarifies the final part of the sentence relating to whether suit may be filed in state or federal court within

Cook County. In contrast, Plaintiff argues that the word "shall" is both preceded by and followed by permissive language and the phrase "on a non-exclusive basis" must be read to modify the entire sentence, creating permissive jurisdictions in Cook County.[8]

After considering the parties' positions and carefully analyzing the disputed clause, the Court rejects Defendants' contention that the phrase "on a non-exclusive basis" can be read to modify/clarify only the last part of the disputed sentence. Defendants' interpretation of the phrase "non-exclusive basis" as clarifying "whether either federal or state court [in Cook County] must be selected as the only proper jurisdiction," (Def. Reply Brief 5), is unreasonable and approaches being nonsensical. The word "or," without any further clarification, fully conveys the simple concept that both federal and state courts in Cook County are *options*. Furthermore, because it is impossible to interpret the forum selection clause as declaring either federal court or state court as the *exclusive* forum, even if the phrase "non-exclusive" is struck, it is difficult to rationalize Defendants' attempt to limit the impact of such phrase to the final part of the disputed sentence. *See Village of Creve Coeur,* 135 Ill.Dec. 88, 543 N.E.2d at 324 ("[I]t is fundamental that the court adopt a *construction of the contract that is reasonable* rather than that which would produce an irrational or absurd result.").

Since Illinois law requires that this Court endeavor to give *reasonable meaning* to all the terms of the contract and avoid an irrational interpretation, the phrase "on a non-exclusive basis" cannot be read to modify/clarify only the word

---

**8.** It is undisputed that Defendants are headquartered in Cook County, Illinois, and Defendants further acknowledge that "some version of [the disputed] sentence likely was

necessary to subject Plaintiff to suit in Cook County...." (Def. Reply Brief 6, Dkt. No. 23.)

"or" because: (1) the context in which such phrase was used does not suggest that its effect is limited to modifying only the final part of the sentence; (2) reading the sentence as a whole, the word "or" fully and unequivocally conveys the rudimentary concept that both state court and federal court in Cook County are *options* for filing suit; and (3) Defendants' construction limiting the impact of such phrase is unpersuasive as all lawsuits are physically filed in *either* state or federal court, and when both are listed as options for filing it is impossible to construe one or the other as the exclusive forum.[9] Accordingly, the only logical and reasonable purpose for the presence of the phrase "on a non-exclusive basis," is to modify the entire disputed sentence. Such phrase therefore must be read to reduce the power that the word "shall" would otherwise command.

In adopting such interpretation, the Court is mindful of Defendants' contention that interpreting the forum selection clause as permissive renders the phrase "shall be brought in" mere surplusage. However, the Court is constricted by the language chosen by the parties and it was the parties, not the Court, that chose the superficially inconsistent language contained in the instant clause. Although the clause includes a word that would otherwise have been mandatory, because such

word was in this instance expressly modified, the Court has no choice but to interpret such word in its modified form. Such interpretation admittedly takes the potency from the word "shall." However, there is no other reasonable interpretation of the clause at issue. Furthermore, it is of note that the alternative interpretation offered by Defendants renders the phrase "non-exclusive basis" mere surplusage.[10]

Although the Court finds that "on a non-exclusive basis" must be read to modify the entire sentence in question, the Court acknowledges that the instant forum selection clause is not a model of clarity. The clause twice utilizes language that is clearly permissive, but in between such phrases uses the otherwise mandatory word "shall." Notwithstanding such apparent contradiction, the poorly chosen language does not change the fact that there is only one reasonable interpretation of such clause as written, and therefore, the clause cannot be deemed ambiguous. *Murphy*, 61 F.3d at 565 ("[A] contract is ambiguous only if both parties were reasonable in adopting their different interpretations of the contract.").

Although not relied upon in reaching the conclusion set forth above, further supporting the Court's construction of the instant clause as a permissive forum selec-

---

**9.** Defendants' contention that the phrase "on a non-exclusive basis" was necessary to further clarify the word "or" because "or" was used merely to make the sentence grammatically correct is also of no avail. Although using the word "and" between "state" and "federal" may be incorrect, the inapplicability of such word is not due solely to the rules of grammar, but instead is driven by the fact that the filing of a case physically occurs at either the state or federal level. Thus, the use of the word "or" to indicate that a case may be filed at either level is grammatically correct, logically correct, and fully conveys the simple concept that both courts are *options*.

**10.** Such phrase would be surplusage as the Court rejects as unreasonable Defendant's contention that the phrase "non-exclusive basis" establishes "whether either federal or state court must be selected as the only proper jurisdiction." (Def. Reply Brief 5.) The disputed sentence unquestionably establishes such point without insertion of the phrase "non-exclusive." Furthermore, Defendants' detailed breakdown of the disputed sentence raises at least some question as to why the parties would, in Defendants' words, "agree to venue [in] Cook County, among other places," if the only forum a suit could be brought in is Cook County. (*Id.*)

tion clause is the policy consideration that mandatory forum selection clauses should be clear and specific. The Appellate Court of Illinois has recognized the importance of clarity in mandatory forum selection clauses, stating:

> If parties to a contract agree to try their case in a specific forum they could be giving up important rights. At the same time, a forum selection clause seeks to bind a state to try a case it otherwise might not want. Good policy dictates that a true forum selection clause should be clear and specific.

*Whirlpool Corp. v. Certain Underwriters at Lloyd's London,* 278 Ill.App.3d 175, 214 Ill.Dec. 901, 662 N.E.2d 467, 471 (1996); *see also Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 756 (7th Cir.1992) ("The law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive."). Federal and state courts applying substantive law from other jurisdictions likewise acknowledge the importance of clarity in forum selection clauses that mandate an *exclusive* forum. *See Saxena,* 2002 WL 992636, at *2 ("To be considered mandatory, a forum selection clause *must clearly express an intent* that the chosen forum is both compulsory and exclusive ... [and][a]lthough no specific set or arrangement of words is required to make a clause mandatory, the intent of the parties *to foreclose suit in any forum other than that named in the agreement must be evident* from the contractual language") (emphasis added); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.,* 817 F.2d 75, 77 (9th Cir.1987) ("[I]n cases in which forum selection clauses have been held to require litigation in a particular court, the language of the clauses *clearly required* ex-

clusive jurisdiction."); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3803.1, p. 131 (2007) ("[M]andatory forum selection clauses *contain clear language* indicating that jurisdiction and venue are appropriate *exclusively in* the designated forum.") (emphasis added); *Eisenbud v. Omnitech Corporate Solutions, Inc.,* No. 14695–NC, 1996 WL 162245, at *1 (Del.Ch. Mar. 21, 1996) (unpublished) (acknowledging the "general trend" that absent "clear language" forum selection clauses will not be interpreted as exclusive and holding that "[p]arties should not be bound forever to a static forum selection process unless unequivocal language expresses that intention so clearly that a court could not interpret the professed forum selection clause otherwise"); *Evergreen Nat. Indem. Co. v. Capstone Bldg. Corp.,* No. 3–07–cv–1189, 2008 WL 349457, at *4 (D.Conn. Feb. 6, 2008) (unpublished) (denying motion to dismiss for improper venue because "inartful drafting ma[de] the parties' intent impossible to discern" and the court would not interpret the clause as creating an exclusive forum "absent such clear language"); *Waste Services, LLC v. Red Oak Sanitation, Inc.,* No. 2z:08CV417DS, 2008 WL 2856459, at * 2 (D.Utah July 23, 2008) (unpublished) ("[T]he forum selection clause is permissive, either due to the lack of exclusive language or the ambiguity."); *Knight Oil Tools, Inc. v. Unit Petroleum Co.,* No. CIV 05–0669, 2005 WL 2313715, at *7 (D.N.M. Aug. 31, 2005) (unpublished) ("If the [forum selection clause] is ambiguous-capable of being construed as either permissive or mandatory, the paragraph is deemed to be permissive.").

Here, as discussed above, the Court finds that the only logical interpretation of the phrase "on a non-exclusive basis" in the instant forum selection clause is that such phrase modifies the entire sentence

and does not merely clarify the patently obvious fact that suit may be filed in either state *or* federal court. Although the word "shall" is otherwise a mandatory word, there is no reasonable interpretation of the instant clause that can avoid the fact that such otherwise mandatory word is modified by the phrase "on a non-exclusive basis," resulting in a clause that does not mandate that the designated jurisdictions in Cook County are exclusive—on the contrary, the clause expressly states that such jurisdictions are "non-exclusive." Furthermore, public policy supports the construction of the clause as permissive since the "intent of the parties *to foreclose suit* in any forum other than that named in the agreement ... [is not] evident from the contractual language." *Saxena,* 2002 WL 992636, at *2 (emphasis added); *see Whirlpool Corp.,* 214 Ill.Dec. 901, 662 N.E.2d at 471 ("Good policy dictates that a true forum selection clause should be clear and specific"). Accordingly, the contractually designated jurisdictions in Cook County, Illinois, are *permissive,* not exclusive, jurisdictions for actions arising out of the Agreement.[11]

## C. The Agreement is Ambiguous Regarding the Prerequisites for Making a Claim Within the Limitations Period

■ As discussed above, when there is a dispute over the interpretation of identified contract provisions, the Court must first, considering the contract as a whole, determine as a matter of law whether the disputed provisions are ambiguous. *Quake Constr.,* 152 Ill.Dec. 308, 565

N.E.2d at 994. A contract should be classified as ambiguous if the language therein "is susceptible to more than one reasonable meaning or obscure in meaning through indefiniteness of expression." *Platt,* 286 Ill.Dec. 222, 813 N.E.2d at 283. Only after determining that an ambiguity exists should the Court consider extrinsic evidence. *Gallagher,* 314 Ill.Dec. 133, 874 N.E.2d at 58. Although extrinsic evidence may be necessary to resolve ambiguity, "the interpretation of [ambiguous] language is a question of fact which a ... court cannot properly determine on a motion to dismiss." *Quake Constr.,* 152 Ill. Dec. 308, 565 N.E.2d at 994; *see Northern Trust Co. v. MS Securities Services, Inc.,* No. 05C3370, 2006 WL 695668, at *8–10 (N.D.Ill. Mar. 15, 2006) (unpublished) (denying motion to dismiss a breach of contract count at the 12(b)(6) stage because "the different interpretations offered by the parties appear[ed] reasonable" and consideration of extrinsic evidence at a later stage in the proceedings would "help lead to the correct interpretation").

Here, the parties offer conflicting interpretations of the meaning of the language contained in sections 15(e), (i), and (1) of the Agreement. Although both parties acknowledge the applicability of the two year limitations period for asserting a claim for environmental indemnification, they disagree as to the interplay between sections 15(e) and 15(1) with the limitations provision contained in section 15(i). The relevant portions of the disputed provisions are as follows:

---

11. The Court does not reach the parties' arguments regarding the impact of the Agreement's reference to injunctive relief being pursued in "any court of the United States" that has jurisdiction over the parties. (Agreement § 19.) Such provision expressly indicates that section 19 is "subject to the provisions set forth in *Section 21* below," (*id.*), and therefore section 19 does not somehow trump the impact of the forum selection clause in section 21. Furthermore, Plaintiff's argument on such point is moot as the Court finds that section 21, whether read alone or in conjunction with section 19, can be interpreted only as designating permissive jurisdictions. ·

(e) *Procedures Relating to Indemnification Among Buyer and Seller.* Following the discovery of any facts or conditions which could reasonably be expected to give rise to a Loss or Losses for which indemnification is provided under this Agreement, the party seeking indemnification (the *"Indemnified Party"*) shall, as promptly as reasonably possible thereafter, provide written notice to the party from whom indemnification is sought (the *"Indemnifying Party"*), setting forth the specific facts and circumstances, in reasonable detail, relating to such Loss or Losses and the amount of Loss or Losses (or a reasonable, good-faith estimate thereof if the actual amount is not known or not capable of reasonable calculation) (*"Indemnification Notice"*); *provided, however,* that failure to give such Indemnification Notice on a timely basis shall not affect the indemnification provided hereunder except to the extent that the Indemnifying Party shall have been actually and materially prejudiced as a result of such failure....

(i) *Time Limitation.* Except as otherwise provided herein, any claim by any Buyer Indemnified Party for indemnity arising under this Agreement, including pursuant to *Sections 15(b)* [12] *and 15(c),* shall be brought within two (2) years after the Closing Date. A claim shall be deemed to have been brought only upon delivery of a proper Indemnification Notice to the other party at the notice address set forth in *Section 20.* Any claim required to be made within such two (2) year period not so timely made shall be forever barred.

(1) *Environmental Remediation Monetary Limitation.* Notwithstanding any other provision of this Agreement, none of the Buyer Indemnified Parties shall have any claim under *Section 15(b)(iv)* of this Agreement against Seller or any other member of the BP Group for any Remediation Losses unless and until the aggregate of all such Remediation Losses incurred or sustained by the Buyer Indemnified Parties exceeds Five Million Dollars ($5,000,000), and then only for the excess over Five Million Dollars ($5,000,000) (the *"First Threshold"*)....

(Agreement §§ 15(e), (i), & (1).)

In essence, Defendants argue that the word "claim" has a static meaning across sections 15(i) and 15(1), creating a condition precedent for seeking indemnity that Plaintiff incur over $5,000,000 in environmental Remediation Losses *within* two years of the closing date. In contrast, Plaintiff contends that the Agreement does not provide a definition of the word "claim" and that section 15(1) therefore merely sets a threshold applicable to *recovery* of environmental Remediation Losses resulting in no prerequisite for *asserting* indemnity claims. Plaintiff's position relies on the definition of the term "Indemnification Notice" set forth in section 15(e).

After considering the Agreement as a whole, the Court finds that ambiguity exists regarding whether there is a monetary pre-requisite to filing a claim for indemnity. Such ambiguity does not exist merely because the parties disagree as to the contract's meaning, rather, careful consider-

**12.** Section 15(b), titled *"Seller's Indemnification of Buyer,"* includes a subsection stating, in essence, that subject to the monetary limitation in section 15(1), seller shall indemnify buyer from any and all losses which relate in any way to "property damage caused by, or any environmental remediation required due to a violation of the Health, Safety and Environmental Laws during pre-Closing operation of the Business by Seller or other members of the BP Group (*'Remediation Losses'*)." (Agreement § 15(b).)

ation of the Agreement's language reveals two conflicting, yet commercially reasonable, interpretations of the contested provisions. Accordingly, for the reasons explained more fully below, the Court cannot rule, as matter of law, as to the proper interpretation. *See Northern Trust Co.*, 2006 WL 695668, at *8, 10 (denying the defendant's motion to dismiss a breach of contract count because although the contract must be interpreted in a commercially reasonable manner, the plaintiff presented an interpretation, and scenarios in support of such interpretation, that was "not obviously commercially unreasonable"); *Cortez Productions, Inc. v. Monterey Peninsula Artists, Inc.*, No. 03C4630, 2004 WL 609375, at *3 (N.D.Ill. Mar. 22, 2004) (unpublished) (denying the defendant's motion to dismiss because a term in the contract was "ambiguous and susceptible of two reasonable, but conflicting, interpretations").

Defendants *reasonably* contend that environmental remediation expenditures exceeding the $5,000,000 threshold are a prerequisite to submitting a claim for indemnification. Section 15(i) expressly states that a "claim" must be brought within two years of closing, and section 15(1) uses the same word—"claim"—in discussing the monetary threshold. Specifically, section 15(1) states that Plaintiff shall not have a "claim" for indemnification "unless and until" [13] the aggregate of environmental Remediation Losses exceed $5,000,000. (Agreement § 15(1).) Accordingly, it is reasonable to construe the Agreement to mean that there can be no indemnification "claim" unless losses exceed $5,000,000 within two years of closing.

However, Plaintiff *reasonably* contends that the word "claim" is not a term of art, but rather is used in sections 15(e) and 15(1) in common parlance.[14] Under Plaintiff's construction, section 15(e) serves one clear purpose—establishing a limitations period—whereas 15(1) serves another—allocating responsibility between the parties for environmental remediation costs.[15] Supporting Plaintiff's interpretation, the limitations provision in section 15(i) requires that an "Indemnification Notice" be timely delivered in order to assert a claim, and the term "Indemnification Notice" is expressly defined in the Agreement as a written notice "setting forth the specific facts and circumstances, in reasonable detail, relating to such Loss or Losses and the amount of Loss or Losses (*or a reasonable, good-faith estimate thereof if the actual amount is not known or not capable of reasonable calculation*)." (Agreement § 15(e)) (emphasis added). Accordingly, under Plaintiff's reading, since the limitation provision expressly requires the filing of a Notice that permits estimations based on losses not yet incurred, section 15(1), which is in no way referenced by the

---

13. The use of the word "until" further supports the reasonableness of Defendants' position since it suggests a direct connection between the time a claim comes into existence and the dollar amount of Remediation Losses.

14. The term "claim" is not capitalized, underlined, or otherwise emphasized in the Agreement. Nor is it expressly defined as are numerous other terms. The Court therefore rejects Defendants' assertion that "[t]he Agreement defines 'claim'" in section 15(1). (Def. Mo. to Dismiss Brief 14.)

15. Defendants characterize Plaintiff's reliance on § 15(e) in construing § 15(i) as conflating "two separate and distinct provisions in the Agreement [that] have different purposes ...." (Def. Mo. to Dismiss Brief 15.) However, Defendants attempt to read sections 15(i) and 15(1) together can likewise be characterized as conflating two separate and distinct provisions of the Agreement that have different purposes. Furthermore, as § 15(i) utilizes a term expressly defined in § 15(e), Plaintiff's reliance on the definition in § 15(e) is unassailable.

limitations provision, should not be read as a condition precedent to advancing a "claim." Rather, Plaintiff argues, section 15(1) is merely a monetary limitation as to *the amount* of an indemnification claim that can ultimately *be recovered.* Because Plaintiff provided an Indemnification Notice within two years of closing that estimates environmental remediation losses in excess of $22,000,000, Plaintiff contends that it should not matter that it had not reached the $5,000,000 threshold before expiration of the two year period after closing.

Both interpretations discussed above are commercially reasonable in light of the contract read as a whole. On one hand, the use of the same word—"claim"—in subsections 15(i) and 15(1) suggests that environmental Remediation Losses in excess of $5,000,000 must be incurred within two years of closing in order for Plaintiff to validly assert a "claim" for indemnification. As noted by Defendants, any other reading may permit indemnification to be pursued years into the future. On the other hand, it is plain from the Agreement that the parties did not opt to define the word "claim" or to cross reference the limitations provision to the monetary threshold provision. Instead, the limitations provision indicates that a claim shall be deemed to have been brought "only upon delivery of a proper Indemnification Notice" and the definition of "Indemnification Notice" appears to permit identification of a good faith estimate of Losses. Accordingly, the Agreement can reasonably be read in a manner whereby the limitations provision is satisfied as long as Plaintiff submits an Indemnification Notice detailing both "the facts and circumstances" relating to its Losses and a "good faith estimate" of such Losses. By express definition, Losses include "corrective and remedial obligations." [16] (Agreement §§ 15(e), (i), and (n).)

Although the parties attack the opposing interpretations as leading to an "ad absurdum" result, the reality is that both constructions are commercially reasonable, one clearly favoring Defendant as it severely restricts Plaintiff's ability to recover for environmental remediation, and the other clearly favoring Plaintiff as it permits recovery for cleanup costs expended many years after the Agreement was signed.[17] Therefore, Defendants cannot

---

**16.** The Agreement defines the term *"Losses"* to include "any and all costs, claims, losses, liabilities, obligations (including corrective and remedial obligations), damages and expenses...." (Agreement § 15(n).) The inclusion in such definition of "liabilities" and "obligations (including corrective and remedial obligations)" lends further support for Plaintiff's construction since defined *obligations* to perform environmental cleanup may be a sufficient basis for claiming indemnification even if such money has not yet been expended.

**17.** The Court rejects Plaintiff's contention that Defendants' interpretation leads to an ad absurdum result because it would create an incentive to expend tens of millions of dollars in environmental cleanup within two years of the closing date. Although such a strict limitations period would clearly benefit Defen-

dants, the Court cannot label it as absurd since it is reasonable for a party in Defendants' position to bargain for a strict time limitation that would require the total exposure for environmental indemnity to be definitively established in an expeditious manner. The Court likewise rejects Defendants' contention that Plaintiff's construction leads to an ad absurdum result because it would undermine the impact of the limitations provision. Although such interpretation would clearly benefit Plaintiff, such construction still requires an Indemnification Notice to be delivered within two years of closing identifying both the reason for the claimed right to indemnity and a good faith estimate of the amount claimed. Plaintiff's interpretation of the Agreement can hardly be labeled unreasonable since Defendants admit that it was generally known *for more than a decade* that contamination existed at the Yorktown refin-

prevail at the 12(b)(6) stage because "[Defendants'] construction of the agreement, while reasonable, requires an inference in favor of Defendant and this Court must draw all reasonable inferences in favor of Plaintiff for the purposes of this motion to dismiss." *Cortez Productions*, 2004 WL 609375, at *3. Since both parties have advanced reasonable interpretations of the ambiguous contract provisions, extrinsic evidence not presently before the Court is necessary to resolve the ambiguity. *See Quake Constr.*, 152 Ill.Dec. 308, 565 N.E.2d at 994 ("If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [trial] court cannot properly determine on a motion to dismiss."). Defendants' motion to dismiss is therefore denied.

## D. The Complaint Sufficiently Alleges that Plaintiff May Seek Relief Under the Agreement

■ As previously stated, at the 12(b)(6) stage the Court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Markets*, 213 F.3d at 180. Furthermore, all reasonable inferences from the facts in the complaint must be resolved in favor of the plaintiff. *Chao*, 415 F.3d at 346. A complaint is therefore sufficient if it "raise[s] a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic*, 550 U.S. at 555, 127 S.Ct. 1955. Here, Defendants assert that: (1) Plaintiff's Complaint fails to allege facts sufficient to establish that Plaintiff has rights under the Agreement; and (2) Plaintiff cannot establish the same even if granted leave to amend. As discussed be-

low, the Court finds that the Complaint sufficiently states a claim on which relief can be granted. Furthermore, the Court will not evaluate Defendants' second argument at this stage in the proceedings since, at the 12(b)(6) stage, the Court "does not resolve contests surrounding the facts, the merits of a claim, *or the applicability of defenses.*" *Republican Party of N.C.*, 980 F.2d at 952 (emphasis added).

■ The Complaint is styled in a manner that names "Western Refining Yorktown, Inc. f/k/a Giant Yorktown Inc." as the plaintiff. (Compl. at 1.) No additional detail is provided regarding the facts underlying Plaintiff's apparent change in name. The Complaint does, however, allege facts explaining why Giant Yorktown, Inc. has the right to enforce the Agreement. It states that, within months of entering into the Agreement and prior to the closing date, Giant Industries, a party to the Agreement, assigned its rights to Giant Yorktown, its wholly-owned subsidiary. (Compl. ¶¶ 27–29.) The Complaint further alleges that Giant Industries "guaranteed performance in a manner consistent with the requirements of the Agreement" and that "Plaintiff stands in Giant Industries' place as to its benefits and obligations under the Agreement." (Compl. ¶ 28.)

Defendants first claim that Plaintiff failed to plead facts sufficient to allege how it came to possess rights under the Agreement. Defendants' challenge to Plaintiff's ability to enforce the Agreement does not attack the propriety of assignment from Giant Industries (parent) to Giant Yorktown (subsidiary), but instead suggests that an impermissible change in corporate form/ownership occurred thereafter. In support of such argument, Defendants con-

ery, and Defendants were likely aware from the outset of negotiations for the sale of the

refinery that environmental remediation would be a protracted process.

tend that Plaintiff's omission of details regarding its corporate identity/ownership and use of "f/k/a" (formerly known as) in the caption of the Complaint raises the possibility of various changes in business form/ownership, such as a merger or stock sale, both of which are prohibited under the Agreement. However, at the 12(b)(6) stage, the Court will not infer facts in Defendants' favor regarding Plaintiff's change in name. Rather, the Court finds that Plaintiff has sufficiently pled a right to relief because Giant Yorktown plainly had rights under the Agreement, and it is not unreasonable to infer in Plaintiff's favor that "f/k/a," when used in the caption identifying the plaintiff as "Western Refining Yorktown, Inc. f/k/a Giant Yorktown, Inc.," merely denotes a change in corporate name.

Defendants next argue that, based on facts outside the Complaint, Plaintiff cannot allege facts that will establish a right to relief under the Agreement. First, because the Court finds that Plaintiff has alleged sufficient facts to set forth a right to relief, the claim that Plaintiff cannot amend its Complaint to allege sufficient facts is essentially moot. Second, as a 12(b)(6) motion tests the sufficiency of the Complaint and does not resolve factual contests nor generally consider the applicability of defenses, the Court declines Defendants' invitation to consider the public documents relied on by Defendants and

does not reach the merits of the asserted defense.[18] *See Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir.2007) (en banc) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993)) (indicating that, at the 12(b)(6) stage, the Court does not reach the merits of affirmative defenses except "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense ... 'clearly appear[ ] *on the face of the complaint.'* "); *Enviro Management & Research, Inc. v. VMAC Corp.,* No. 1:08cv1239, 2009 WL 111602, at *2 (E.D.Va. Jan. 14, 2009) (unpublished) ("[A] potentially valid defense that can be proved at the summary judgment stage or at trial does not present a reason to bar the claims out of hand at the pleading stage.").

Third, even if the Court considers the public documents relied on by Defendants, the Court would deny the motion to dismiss as Defendants have failed to establish that Plaintiff has no right to relief that is plausible on its face. Although after further facts are developed Defendants may ultimately prove that Plaintiff cannot recover due to Western Refining's acquisition of Giant Industries (an issue on which the Court expresses no opinion), the documents before the Court do not conclusively establish that Plaintiff has no plau-

---

**18.** 'Defendants contention that Plaintiff cannot recover under the Agreement relies on public documents reflecting Western Refining's acquisition of Giant Industries in 2007. Defendants justify their reliance on such documents outside the Complaint because they are "official public records" that may be considered by the Court. *Davis,* 395 F.Supp.2d at 335. However, unlike the Agreement that was clearly relied upon in the Complaint and was therefore properly attached to Defendants' motion to dismiss, the records relating to Western Refining are not relied upon in the Complaint. Accordingly, the Court declines

to consider such documents as they are directly pertinent to a *defense* to the Complaint, not the claims set forth therein. *See id.* (indicating that the Court may consider "official public records *pertinent to the plaintiffs' claims* ") (emphasis added); *In re Cree, Inc. Securities Litigation,* 333 F.Supp.2d 461, 470 (M.D.N.C.2004) (declining to take judicial notice of, or otherwise consider, public documents at the 12(b)(6) stage that *purportedly* supported the defendants' statute of limitations defense as the defendants failed to establish that plaintiff's complaint relied on such documents).

sible right to relief.[19] Accordingly, the Court finds that the Complaint's detailed explanation of how Giant Yorktown obtained rights under the Agreement, the styling of the Complaint as being filed by "Western Refining Yorktown, Inc., f/k/a Giant Yorktown Inc.," along with the express assertion that *"Plaintiff* stands in Giant Industries' place," (Compl.¶ 28) (emphasis added), are sufficient at this stage to establish Plaintiff's plausible right to enforce the Agreement. Defendants' motion is therefore denied.

## IV. Conclusion

As discussed more fully above, Defendants' 12(b)(3) motion to dismiss or transfer venue is **DENIED** as the forum selection clause in the Agreement is merely permissive, and Defendants' have failed to otherwise challenge venue in this Court. Defendants' 12(b)(6) motion to dismiss is likewise **DENIED** as, taking the facts alleged in the Complaint as true and making reasonable inferences in Plaintiff's favor, the Complaint sufficiently sets forth a plausible claim to relief and provides Defendants sufficient notice of the grounds on which such claim rests.

Additionally, the Court **DENIES** Plaintiff's motion seeking leave to file a response exceeding thirty pages, but **GRANTS** Plaintiff's motion seeking leave to file a conforming response.[20] The Clerk is therefore instructed to file the conforming response submitted by Plaintiff.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

19. First, it is unclear whether the non-assignment clause was even violated as the Complaint contends that Giant Industries had assigned all of its rights and obligations under the Agreement to Giant Yorktown years before Giant Industries was acquired by Western Refining in May of 2007. Second, although Defendants argue that Giant Industries remained the guarantor of Giant Yorktown even after the permissible assignment to its subsidiary, the terms of the "Guaranty Agreement" (the "Guaranty") indicate that the Guaranty expires after all the "Guaranteed Obligations are fully and finally, paid, performed and discharged," and the Court does not have facts before it to determine whether such Guaranty remained in effect as of May of 2007. (Pl. Response Brief, Ex. 1(C) at 7.) Third, assuming, arguendo, that an otherwise prohibited assignment occurred when Giant Yorktown's parent company was acquired by Western Refining, De-

fendants still fail, at this stage, to establish that *the effect* of such prohibited transfer is that Plaintiff cannot pursue environmental indemnification since: (1) Giant Yorktown possessed indemnity rights prior to Western's acquisition of Giant Yorktown's parent, (2) the Agreement provides that impermissible assignments under the Agreement are "void and without effect"; and (3) Plaintiff contends that it is the same legal entity as Giant Yorktown. Accordingly, Defendants have not established that it is implausible that Plaintiff remains the party in possession of indemnity rights even after Western's acquisition of Giant Industries.

20. The conforming response is unchanged in substance but complies with the page limit established by Local Rule after the removal of the Table of Contents and Table of Authorities.