# IN THE SUPREME COURT OF TEXAS

═══════════
No. 12-0163
═══════════

IN RE MARK FISHER AND REECE BOUDREAUX, RELATORS

══════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
══════════════════════════════════════════

**Argued October 10, 2013**

JUSTICE JOHNSON delivered the opinion of the Court.

After Nighthawk Oilfield Services, Ltd. acquired Richey Oilfield Construction, Inc. from Mike Richey, the business did not go as well as the parties had hoped and Richey filed suit in Wise County against two Nighthawk executives. In this mandamus proceeding we consider whether the trial court abused its discretion by failing to enforce forum selection clauses in the acquisition documents. Concluding that it did, we conditionally grant relief.

## I. Background

On May 3, 2007, Mike Richey sold his interest in Richey Oilfield Construction, Inc. (Richey Oil), an oilfield services company that he founded and operated, to Nighthawk Oilfield Services, Ltd. (Nighthawk) for $33 million. NOSGP, L.L.C. was Nighthawk's general partner and Mark Fisher and Reece Boudreaux were limited partners. The transaction resulted in Richey Oil becoming a wholly-owned Nighthawk subsidiary, with Richey remaining employed as president of Richey Oil and becoming a limited partner in Nighthawk.

The primary agreements regarding the transaction were a Stock Purchase Agreement, an agreement for the purchase of Richey Oil's goodwill (the Goodwill Agreement), and a Promissory Note. Each contained a forum selection clause naming Tarrant County as the venue for state court actions.

In the Stock Purchase Agreement, NOSROC, Inc.[1] agreed to pay Richey $13 million in cash for Richey Oil's issued and outstanding stock. That agreement contained the following provision:

> Jurisdiction; Service of Process. Any proceeding arising out of or relating to this Agreement may be brought in the courts of the State of Texas, Tarrant County, or if it has or can acquire jurisdiction, in the United States District Court for the Northern District of Texas, and each of the parties irrevocably submits to the non-exclusive jurisdiction of each such court in any such proceeding, waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the proceeding may be heard and determined in any such court and *agrees not to bring any proceeding arising out of or relating to this Agreement in any other court*. (Emphasis added)

In the Goodwill Agreement, Richey sold his goodwill interest to Nighthawk. That interest was defined as his "right, title and interest in and to all of [Richey's] knowledge, experience and rights relating to the Business, and [Richey's] personal relationships and experience with the customers of the Business and further including the trade name 'Richey' to the extent and as used in conjunction with the Business." The Goodwill Agreement provided that Richey would receive $7 million in cash, a $6.5 million promissory note, and $6.5 million in Nighthawk limited partnership interest units. The Goodwill Agreement contained the same venue selection clause as the Stock Purchase Agreement.

---

[1] The Stock Purchase Agreement was executed between Richey, as the seller, and NOSROC, INC., as the purchaser. An affidavit executed by Fisher explains that NOSROC, INC. was "a corporation formed for tax reasons, which then immediately conveyed the stock to Nighthawk pursuant to an agreement between the transaction parties."

2

The $6.5 million promissory note (the Note) was signed by Fisher as president of Nighthawk. It provided that "[Nighthawk] . . . irrevocably agrees that any legal proceedings in respect of this note . . . or other writing relating hereto shall be brought in the district courts of Tarrant County, Texas, or the United States District Court for the Northern District of Texas."

A month after Nighthawk purchased Richey Oil, Nighthawk made a $20 million "special distribution" to its partners. The distribution was contemplated in the Goodwill Agreement, which provided: "[I]t has been represented to [Richey] that a distribution to the owners or holders of all units of [Nighthawk] is anticipated to be made contemporaneously with or subsequent to the Closing and [Richey] shall participate in such distribution on a pro rata basis."

Six months later, Richey paid $1 million to Nighthawk at Fisher's request. According to Richey, Fisher related that he was seeking similar amounts from all the limited partners, Nighthawk would treat the money as loans, and in six months the loans plus ten percent would be paid back. Fisher claims that the other limited partners made similar contributions totaling $3.9 million, but they agreed that those contributions would be treated as equity, not loans.

Richey asserts that when he asked Fisher to repay the $1 million as agreed, Fisher denied his request and claimed the money was a capital contribution for which Richey would receive preferred equity units. Richey has never been repaid the $1 million.

In connection with the acquisition, Nighthawk opened a controlled-disbursement account so Richey Oil could access Nighthawk's revolving line of credit. As part of that process, Richey and Fisher executed a Deposit Account Signature Card at Bank of America that gave Richey check signing authority. In May and June 2009, Fisher authorized Richey to pay Richey Oil vendors from

3

the account. However, when Richey did so, Bank of America rejected several of the checks for insufficient funds in the account. According to Richey, Fisher told some payees of the rejected checks that Richey created the problem. Several payees referred their returned checks to collection agencies, attorneys, and authorities, who sent demand letters threatening civil and criminal prosecution. Shortly thereafter, Nighthawk and Richey Oil filed for bankruptcy.

Richey soon sued Fisher and Boudreaux in Wise County where Richey resided. He sued both of them for breach of fiduciary duty, common law fraud, statutory fraud, and violations of the Texas Securities Act. He sued Fisher separately for defamation, common law fraud, negligent misrepresentation, and interference with prospective business relations related to the statements Fisher allegedly made to him about availability of money in the Richey Oil account and communications made to third parties regarding the returned checks. He sued Boudreaux separately for aiding and abetting Fisher's breaches of fiduciary duty, acts of fraud, and violations of the Texas Securities Act.

Fisher and Boudreaux responded by moving the trial court to transfer venue to Tarrant County or dismiss the suit pursuant to the mandatory venue selection clauses in the Stock Purchase Agreement and the Goodwill Agreement. They also argued that Richey lacked standing to recover damages to his reputation or goodwill because he had conveyed those rights to Nighthawk in the Goodwill Agreement and many of his other claims belonged to Nighthawk and could only be brought by the Nighthawk bankruptcy trustee.

The trial court denied Fisher's and Boudreaux's motions and pleas to the jurisdiction. They then sought, but were denied, mandamus relief from the court of appeals. ___ S.W.3d ___ (Tex.

4

App.—Fort Worth 2012, orig. proceeding). In this Court Fisher and Boudreaux (collectively, Relators) argue that Richey lacks standing because his claims actually belong to Richey Oil or Nighthawk and must be brought by the bankruptcy trustee; some of Richey's claims seek recovery of debts owed to him by Nighthawk and must be filed as claims against Nighthawk in bankruptcy court; and the trial court abused its discretion by failing to enforce the mandatory venue agreement under the major transaction statute, Texas Civil Practice and Remedies Code § 15.020. We will address the contentions in turn, beginning with any challenging jurisdiction. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (noting that if a court does not have jurisdiction, its opinion addressing any issues other than jurisdiction is advisory).

## II. The Standing Challenge

Relators argue that Richey's claims regarding mismanagement of Nighthawk's financial affairs belong to Nighthawk and Richey does not have standing to assert them because the bankruptcy trustee must bring the claims on Nighthawk's behalf so as to preserve assets for the benefit of all partners. Richey counters that mandamus review is not available on the issue of standing because Relators cannot show they lack an adequate remedy by appeal, but even if mandamus review is available, he has standing because he suffered personal damages unique to him.

Relators rely on *Hall v. Douglas*, 380 S.W.3d 860, 873 (Tex. App.—Dallas 2012, no pet.), in which the court of appeals noted that "[a] limited partner does not have standing to sue for injuries to the partnership that merely diminish the value of that partner's interest." But as that court recognized, a partner who is "personally aggrieved" may bring claims for those injuries he suffered directly. *Id.* at 872.

5

Richey's pleadings asserted that he made a $1 million payment to Nighthawk, the other limited partners failed to make similar payments, and he suffered damages including "loss of earning capacity, lost profits, loss of income, damage to credit reputation, lost investments," and "other losses." He also alleged that he sustained injury to his character and suffered mental anguish.

When a plea to the jurisdiction is based on the pleadings, the pleadings are to be construed liberally in favor of the plaintiff. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Richey's allegations do not affirmatively negate his having been "personally aggrieved." Thus, given his allegations, we need not decide whether mandamus review is available to Relators as to Richey's standing to assert claims based on his $1 million payment because even if it is, the record before us does not demonstrate that Relators are entitled to mandamus relief.

Relators also claim that Richey does not have standing to bring defamation claims based on the bank's refusal to honor Richey Oil checks. They posit that only Richey Oil has standing to bring those claims, and since Richey is not the owner of Richey Oil, he cannot bring the claims on the company's behalf. *See Neely v. Wilson*, ___ S.W.3d ___, ___ (Tex. 2013) (noting that a corporate entity may maintain a suit for libel). But Richey's defamation claims are that Fisher made defamatory statements about Richey personally by telling payees of the returned checks that Richey caused the insufficient funds problems. Richey claimed those false statements subjected him to criminal and civil prosecution, financial loss, and injury to his personal reputation. Thus, he alleged injury personal to himself and has standing to bring the claims.

### III. Claims Against Nighthawk

Relators next assert that the trial court abused its discretion in refusing to dismiss for lack of subject matter jurisdiction because Richey's claims for deferred consideration and the unpaid $1 million loan are claims for a debt owed by Nighthawk, they must be filed against Nighthawk in bankruptcy court. But the trial court does not lack jurisdiction over Richey's claims against Relators. Whether those claims should have been brought against another party (Nighthawk) is not a question of jurisdiction requiring dismissal, but is a question of liability. Relators did not argue in the trial court that they were the incorrect parties for Richey to bring the claims against. Relators have not shown themselves entitled to mandamus relief on this ground.

Relators also argue that "proceeding with the debt claims against Nighthawk in the Wise County suit violates the automatic stay in bankruptcy." But Nighthawk is not a defendant in the Wise County suit and the automatic bankruptcy stay does not extend to non-debtors. *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (noting that by its terms, the automatic stay applies only to the debtor); *Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 144 (Tex. App.—Texarkana 2000, no pet.) (holding that the bankruptcy stay does not extend "to separate legal entities such as corporate affiliates, partners in debtor partnerships or to codefendants in pending litigation." (quoting *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993)); *see also In re Pegasus Funds*, 345 S.W.3d 175, 176 (Tex. App.—Dallas 2011, orig. proceeding). Relators argue that the bankruptcy stay should extend to them because the stay applies to a non-debtor "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a

7

judgment or finding against the debtor." *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). Relators have not shown that this is the situation here.

## IV.  The Forum Selection Clauses

We next consider whether the trial court abused its discretion by refusing to transfer Richey's claims pursuant to forum selection clauses in the agreements.

Forum selection clauses are presumptively valid. *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (per curiam). Allowing a lawsuit to proceed in a forum other than that for which the parties contracted promotes forum shopping with its attendant judicial inefficiency, waste of judicial resources, delays of adjudication of the merits, and skewing of settlement dynamics. *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (per curiam). Accordingly, mandamus is available if a trial court improperly refuses to enforce a forum selection clause. *See Laibe Corp.*, 307 S.W.3d at 316; *In re ADM Investor Servs.*, 304 S.W.3d 371, 374 (Tex. 2010). Further, mandamus relief is specifically authorized to enforce a statutory mandatory venue provision. TEX. CIV. PRAC. & REM. CODE § 15.0642.

## A.  Section 15.020–Major Transactions

Relators assert that by its plain language —"Notwithstanding any other provisions of this title"—Texas Civil Practice and Remedies Code § 15.020 overrides other venue provisions and required the trial court to enforce the forum agreements. Section 15.020 applies to a "major transaction," which is defined as a transaction evidenced by a written agreement and which involves $1 million or more:

8

(c)  Notwithstanding any other provision of this title, an action arising from a major transaction may not be brought in a county if:

> (1)  the party bringing the action has agreed in writing that an action arising from the transaction may not be brought in that county, and the action may be brought in another county of this state or in another jurisdiction; or

> (2)  the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction, and the action may be brought in that other county, under this section or otherwise, or in that other jurisdiction.

*Id.* § 15.020(c).  Richey argues that section 15.020 and the forum selection clause in the Goodwill Agreement do not apply for the following reasons: (1) his tort claims do not "arise from" the purchase of Richey Oil; (2) the only agreement that relates to Richey's claims is the Partnership Agreement which has no forum or venue selection clause; (3) the contractual forum selection clause is permissive, not mandatory; and (4) venue is mandatory in Wise County under the statutory provision requiring a suit for libel or slander to be brought in the county where the plaintiff resided at the time of the accrual of the cause of action.  *See id.* § 15.017.  We address the arguments in turn.

### B.  Does Section 15.020 Apply?

The parties do not dispute that the Richey Oil acquisition, which included the sale of Richey's goodwill, constitutes a "major transaction" as defined by section 15.020.  Richey urges, however, that section 15.020 does not apply because his claims against Relators are not claims "arising from" the purchase of Richey Oil; rather, he asserts, his claims arise from the operation or management of Nighthawk.  We have not previously addressed when an action "arises from" a

9

major transaction under section 15.020, but we have previously addressed similar issues as to forum selection agreements.

In *In re International Profit Assocs.*, 274 S.W.3d 672 (Tex. 2009) (per curiam), we analyzed whether a forum selection clause in a contract applied to tort claims between the contracting parties. In determining whether the claims were within the scope of the clauses, we called for a "common-sense" examination of the substance of the claims made to determine if they "arise" from the contract. *Id.* at 677. We explained that a court should consider whether a claimant seeks a direct benefit from a contract and whether the contract or some other general legal obligation establishes the duty at issue. *Id.* We concluded that no matter how the claimant characterized or pleaded the claims, the tort claims in that case—including fraud and negligent misrepresentation—"arise from the contractual relationship between the parties, not from obligations imposed by law." *Id.* at 678.

In *Lisa Laser*, 310 S.W.3d 880, we applied the same type of analysis to determine the scope of a forum selection clause and whether it applied to the plaintiffs' contract claims. In that case, HealthTronics had a contract with Lisa Laser for exclusive distribution rights of certain medical devices. *Id.* at 882. The agreement also provided HealthTronics with rights of first refusal to distribute new products if certain requirements were met. *Id.* An exhibit to the agreement provided that the terms and conditions that followed, including a California forum selection clause that applied to "any dispute arising out of this agreement," applied to sales by Lisa Laser to HealthTronics. *Id.* HealthTronics sued Lisa Laser in Travis County for breach of contract, alleging that Lisa Laser breached its obligation to afford HealthTronics the first right to distribute new products, and for tortious interference with a contract. *Id.* Lisa Laser sought mandamus relief after

10

the trial court denied its motion to dismiss based on the forum selection clause. *Id.* at 882-83. HealthTronics argued that the forum selection clause only applied to part of the contract, that is, sales transactions between it and Lisa Laser. *Id.* at 884. Applying the reasoning from *International Profit Associates*, we concluded that Lisa Laser's obligation, if any, to inform HealthTronics of new products and to offer it a right of first refusal to distribute those products "only arises from the Distribution Agreement." *Id.* at 884-86. The obligations were not imposed under general law, they would not exist but for the agreement, and therefore they arose out of the agreement. *Id.* at 886. We concluded that the forum selection clause itself applied more broadly than to mere sales transactions because it applied to "any dispute arising out of" the agreement and the trial court erred in refusing to enforce the forum selection clause. *Id.* at 887.

Turning to the case at hand, we see no reason to deviate from the type of analysis we used in *International Profit Associates* and *Lisa Laser*. Similarly to our method of analysis in those cases, we will use a common-sense examination of the substance of the claims to determine whether the statute applies. *See Int'l Profit Assocs.*, 274 S.W.3d at 677.

Richey alleged in his live pleadings that "[a] substantial part of the acquisition was deferred consideration in the form of a $6,500,000 Promissory Note." He further alleged that he suffered substantial damages caused by Relators' authorization of the $20 million special distribution and that "[t]he effect of the distribution was to severely impair [Nighthawk's] ongoing operations and ultimately to render [Nighthawk] insolvent and incapable of continuing its business and affairs." Richey brought a claim for breach of fiduciary duty related to that $20 million distribution of Nighthawk assets. He alleged that his damages included "benefit of the bargain losses." And in a

11

response to Relators' supplemental motion to dismiss in the trial court, he explained that he sought damages for "the loss of the promissory note issued [to] him individually."

Applying a common-sense analysis, we conclude that Richey in substance is seeking to recover the $6.5 million owed to him under the Note and for actions flowing directly from the acquisition and actions anticipated to flow from it.

First, the Note was consideration for his transfer of goodwill and was specifically provided for under the Goodwill Agreement. His claim for Nighthawk's failure to pay the Note, regardless of whether it is labeled as a breach of fiduciary duty claim or otherwise, arises from that major transaction. *See id.* (considering the substance of claims such as breach of the duty of good faith and fair dealing to determine whether a forum selection clause applied). Richey's complaint that he lost the benefit of his bargain depends on the Goodwill Agreement and Nighthawk's agreement in it to pay part of the purchase price by means of the $6.5 million note. *See Lisa Laser*, 310 S.W.3d at 886 (holding that a forum selection clause applied to a claim that would have no basis but for the agreement containing the clause). Because Richey's claims substantively arise from commitments in the Goodwill Agreement, we disagree with his claim that the only agreement that relates to his claims is the Partnership Agreement.

Richey asserts that his claims actually arise from Relators' post-acquisition conduct and, therefore, do not "arise from or relate to the Note." Rather, he argues that the Note is merely a source of reference for measuring his damages. He also argues that because he did not sign the Note, he is not bound by the forum selection clause in it. We disagree that these assertions mean section 15.020 is inapplicable. First, section 15.020 does not require that an action arise out of a

12

specific agreement. Rather, it applies to an action "arising from a major *transaction*" if the party bringing the action has agreed in writing that the action will be brought in a certain jurisdiction. TEX. CIV. PRAC. & REM. CODE § 15.020(a) (emphasis added). And as set out above, Richey signed the Goodwill Agreement specifying that claims arising out of or relating to it would be brought in Tarrant County. Richey's claim based on the unpaid note arises out of that major transaction regardless of whether Richey signed the Note or whether his claim "arises" specifically out of the Note.

Second, we disagree with Richey's claim that he merely references the Note to measure his damages. Richey cites *Carr v. Main Carr Development, LLC*, 337 S.W.3d 489, 498 (Tex. App.—Dallas 2011, pet. denied), in which the court held that a non-signatory cannot be compelled to arbitrate when his claims merely "touch matters" covered by a contract containing an arbitration clause, yet the claims do not actually rely on the contractual terms. *Id.* In that case the court of appeals explained that claims must be brought on a contract if liability must be determined by reference to the contract, and the determination of whether a party seeks the benefit of a contract turns on the substance of the claim. *Id.* (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131-32 (Tex. 2005)).

Here, Richey's claims do more than "touch matters" included in the Goodwill Agreement and the Note. Liability for failure to pay him on the Note must be determined by reference to those agreements. *See id.* And when an injury is to the subject matter of a contract, the action is ordinarily "*on the contract.*" *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (emphasis added).

13

## C. Is the Forum Selection Clause Mandatory?

Richey next argues that even assuming his claims arise from Nighthawk's purchase of Richey Oil, section 15.020 is inapplicable because he did not agree in writing that an action arising from the transaction "must" be brought in Tarrant County or "may not be brought" in Wise County. He claims that the acquisition documents and the Note include permissive, not mandatory forum selection clauses. He references the Goodwill Agreement's provisions that "any proceeding arising out of or relating to this Agreement *may* be brought in the courts of the State of Texas, Tarrant County, or if it has or can acquire jurisdiction, in the United States District Court for the Northern District of Texas" and that the parties "submit[] to the *non-exclusive* jurisdiction of each such court," and "the proceeding *may* be heard and determined in any such court." (Emphasis added). Richey argues that this permissive language controls over the mandatory language providing that each of the parties "agrees not to bring any proceeding arising out of or relating to this Agreement in any other court." He asserts that finding the clause mandatory would render all of the permissive language meaningless. Relators counter that the permissive language applies to consent to jurisdiction, but the mandatory language applies to require venue. We agree with Relators.

The beginning of the jurisdiction clause at issue here provides that "[a]ny proceeding arising out of or relating to this Agreement may be brought in the courts of the State of Texas, Tarrant County . . . and each of the parties irrevocably submits to the non-exclusive jurisdiction of each such court in any such proceeding." Objections to personal jurisdiction may be waived, so a litigant may consent to the personal jurisdiction of a court through a variety of legal arrangements. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). For example, a contractual "consent-to-

jurisdiction clause" subjects a party to personal jurisdiction, making an analysis of that party's contacts with the forum for personal jurisdiction purposes unnecessary. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.—Dallas 2010, no pet.) (concluding a contract provision that claims "may be heard" in Dallas courts was a "consent-to-jurisdiction" clause and the trial court erred by granting the defendant's special appearance); *see Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 629 (Tex. App.—Texarkana 2008, pet. denied) (explaining that a permissive forum selection clause is one under which the parties consent to the jurisdiction of a particular forum but do not require suit to be filed there); *see also Granados Quinones v. Swiss Bank Corp. (Overseas), S.A.*, 509 So. 2d 273, 274 (Fla. 1987) ("Permissive clauses constitute nothing more than a consent to jurisdiction and venue in the named forum.").

The provision here providing that the parties irrevocably submit to the non-exclusive jurisdiction of the courts in Tarrant County is a consent-to-jurisdiction clause. But the parties not only submitted themselves to jurisdiction of the Tarrant County courts, each party also "irrevocably . . . agree[d] not to bring any proceeding arising out of or relating to this Agreement in any other court." Our primary goal in construing this contractual language is to determine the parties' intent as reflected by the language they used. *El Paso Field Servs., L.P. v. Mastec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012). The contract reflects intent that the parties submit to the jurisdiction of the state or federal courts in Tarrant County *and* that they will not file suit "arising out of or relating to this Agreement" anywhere else. The requirement that if the parties file suit it will be in Tarrant County is not diluted by their agreement to submit to jurisdiction there, and we disagree with Richey's position that construing the forum selection clause as mandatory would render his

15

agreement to submit to personal jurisdiction in Tarrant County meaningless. Simply put, Richey clearly agreed in the Goodwill Agreement that an action arising from that transaction must be brought in Tarrant County. *See* TEX. CIV. PRAC. & REM. CODE § 15.020(c).

Richey also asserts that when a venue provision such as the one involved here includes the term "non-exclusive," it is not mandatory, even if the provision includes other language reflecting that it is mandatory. Richey cites two cases in support of his assertion that use of the phrase "non-exclusive jurisdiction" makes a forum selection clause only permissive. *See Sauder v. Rayman*, 800 So. 2d 355, 359 (Fla. Dist. Ct. App. 2001); *W. Ref. Yorktown, Inc. v. BP Corp. N. Am. Inc.*, 618 F. Supp. 2d 513, 520-21 (E.D. Va. 2009). But in neither of those cases did the courts' holdings rely exclusively on the phrase "non-exclusive." In *Sauder*, the court held that the phrase "non-exclusive jurisdiction" in a forum selection clause was permissive while the phrase "all actions . . . shall be litigated" in the same clause was mandatory. 800 So. 2d at 359. Because the entire clause did not foreclose multiple interpretations, under a *de novo* review, the court affirmed the trial court's order finding the provision permissive. *Id.* And in *Western Refining Yorktown*, the forum selection clause did not contain the phrase non-exclusive jurisdiction. Rather, the clause provided that an action to enforce the contract "shall" be brought in "the federal or state courts located in Cook County in the State of Illinois on a non-exclusive basis." 618 F. Supp. 2d at 519. The phrase "non-exclusive basis," the court held, meant that filing suit in the courts in Cook County was not mandatory. *Id.* at 523.

We do not consider these cases determinative. Rather, we conclude that where the phrase "non-exclusive jurisdiction" is in a forum selection clause that also includes language reflecting

16

intent that the venue choice is mandatory, the non-exclusive language does not necessarily control over the mandatory language. We agree with the court's decision in *Muzumdar v. Wellness International Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) where the court rejected a party's contention that the phrase "non-exclusive jurisdiction"—which the court noted required the parties to submit to personal jurisdiction—rendered a forum selection clause permissive. There the court concluded that it could not "find that a provision which requires appellants to submit to the 'non-exclusive' jurisdiction of Texas courts somehow undermines a very strongly worded forum selection clause containing mandatory language: 'SHALL BE PROPER ONLY' or 'SHALL BE PROPER' in Dallas County, Texas." *Id.* Similarly, the phrase "non-exclusive jurisdiction" in the Goodwill Agreement does not control over the plainly worded mandatory language.

### D. Venue in Wise County

Finally, Richey argues that venue in Wise County is proper even if it is not mandatory, so the trial court did not err by denying Relators' motion to dismiss. First, Richey points to Texas Civil Practice and Remedies Code § 15.017 which provides that:

> A suit for damages for libel, slander, or invasion of privacy shall be brought and can only be maintained in the county in which the plaintiff resided at the time of the accrual of the cause of action, or in the county in which the defendant resided at the time of filing suit, or in the county of the residence of defendants, or any of them, or the domicile of any corporate defendant, at the election of the plaintiff.

TEX. CIV. PRAC. & REM. CODE § 15.017. He asserts that because he resided in Wise County at the time his cause of action for defamation accrued, this mandatory provision applies.

We have already concluded that section 15.020 applies, mandating that Richey's actions must be brought in Tarrant County. Venue may be proper in multiple counties under mandatory

17

venue rules, and the plaintiff is generally afforded the right to choose venue when suit is filed. *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994). But in this case, the language of section 15.020 applies to an action arising from a major transaction "[n]otwithstanding any other provision of this title." TEX. CIV. PRAC. & REM. CODE § 15.020(c). This indicates that the Legislature intended for it to control over other mandatory venue provisions. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 413-14 (Tex. 2011) (holding that the phrase "notwithstanding any other law" indicates a legislative intent that the provision prevail over conflicting law).

Next, Richey alternatively argues that if section 15.017 does not apply, venue is proper in Wise County under the general venue statute because a substantial part of the events giving rise to his claim occurred there. *See* TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1) (providing that a lawsuit shall be brought in various enumerated places including "in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred"). He cites *Acker v. Denton Publishing*, 937 S.W.2d 111, 115 (Tex. App.—Fort Worth 1996, no writ) for the proposition that if a plaintiff's choice of venue is proper, it is reversible error for a trial court to transfer venue even if the county of transfer would also have been proper if chosen by the plaintiff. But *Acker* did not address whether a case should be transferred when a mandatory venue provision for a different county was applicable. And we long ago explained that "[i]f the plaintiff's chosen venue rests on a *permissive* venue statute and the defendant files a meritorious motion to transfer based on a *mandatory* venue provision, the trial court must grant the motion." *Wichita Cnty. v. Hart*, 917 S.W.2d 779, 781 (Tex. 1996) (emphasis added). The permissive venue statute does not control over the mandatory venue provision applicable in this case.

18

## V.  The Remainder of Richey's Claims

Having determined that Richey's claims seeking his benefit of the bargain losses arose out of a major transaction, we conclude that all of Richey's claims against Relators must be transferred to Tarrant County because Texas Civil Practice and Remedies Code § 15.004 provides that:

> In a suit in which a plaintiff properly joins two or more claims or causes of action arising from the same transaction, occurrence, or series of transactions or occurrences, and one of the claims or causes of action is governed by the mandatory venue provisions . . ., the suit shall be brought in the county required by the mandatory venue provision.

It is not necessary for us to analyze Richey's claims to determine whether they arise from the same transaction, occurrence, or series of transactions: the parties affirmatively assert that they do.

## VI.  Inconsistency Among Agreements

Finally, Richey asserts that because Relators argue that this case is also governed by venue selection clauses providing for venue in Chicago, New York, and Illinois, the inconsistency among all the agreements creates an ambiguity so suit should proceed in Richey's choice of venue.  We disagree.

In order to finance the acquisition of Richey Oil, Nighthawk entered into credit agreements with LaSalle Business Credit, L.L.C. and D.B. Zwirn Special Opportunities Fund, L.P., which contained clauses requiring suit be brought in Chicago and New York, respectively.  Richey acknowledges he was not a party to either of those agreements.  Richey also signed a Subordination Agreement in which he agreed that the $6.5 million note was subordinate to the security interests of LaSalle Business Credit and D.B. Zwirn.  The Subordination Agreement provided that any

19

litigation in connection with that agreement shall be venued in New York. But Relators were not parties to that agreement.

Relators also argue that a deposit agreement with Bank of America, requiring suits regarding the Richey Oilfield account be brought in Illinois, applies to Richey's claims against them. But Richey did not bring claims against Relators regarding the Richey Oil bank account. He claimed that Fisher made defamatory statements to check payees about Richey's being responsible for the checks not being able to be cashed. Relators do not explain how these claims arise out of the deposit agreement with Bank of America.

We disagree that there is any ambiguity as to which venue selection clause should apply to Richey's claims against Relators. Richey's claims arise out of and would not exist but for the acquisition agreements. The venue selection clauses in those agreements apply.

## VII. Conclusion

The trial court abused its discretion by failing to enforce the mandatory forum selection clauses in the Stock Purchase Agreement and Goodwill Agreement. We conditionally grant relief. We direct the trial court to vacate its order denying Relators' motion to transfer venue and to grant the motion. The writ will only issue if the trial court fails to comply with our directive.

_____
Phil Johnson
Justice

**OPINION DELIVERED:** February 28, 2014

20