# IN THE SUPREME COURT OF TEXAS

No. 18-0913

IN RE FOX RIVER REAL ESTATE HOLDINGS, INC.,
M. BUCKNER BACCUS, DANIEL T. COOPER, ROSS M. CUMMINGS,
WARREN DEMAIO, BRUCE F. DICKSON, KEITH K. DICKSON,
EUGENE A. FROST, JR., MARK A. FROST, AND AUGUST J. PELLIZZI, RELATORS

ON PETITION FOR WRIT OF MANDAMUS

**Argued November 16, 2019**

JUSTICE GUZMAN, delivered the opinion of the Court.

JUSTICE BUSBY did not participate in the decision.

This mandamus proceeding involves conflicting mandatory venue provisions, a recurrent and perplexing procedural issue. One provision, section 15.020 of the Texas Civil Practice and Remedies Code, permits parties in a "major transaction" to contractually agree to venue for related disputes.[1] The other, section 65.023(a), mandates venue in a defendant's county of domicile for cases purely or primarily seeking injunctive relief.[2] The trial court enforced the parties' venue agreement in accordance with section 15.020, but the relators argue section 65.023 controls. Neither party disputes that section 15.020 applies, but they part company as to section 65.023(a)'s applicability and whether section 15.020 is a "super mandatory" venue provision that controls over

---

[1] TEX. CIV. PRAC. & REM. CODE § 15.020.

[2] *Id.* § 65.023(a); *see Ex parte Coffee*, 328 S.W.2d 283, 287 (Tex. 1959) (applying section 65.023(a)'s predecessor and holding injunctive relief must be the only or primary relief sought).

all other mandatory venue provisions. We hold that section 15.020 only prevails over venue provisions found in Title 2 of the Civil Practice and Remedies Code and does so here only because section 65.023(a), found in Title 3, is inapplicable. Accordingly, we deny mandamus relief.

## I. Background

The venue dispute in this case arises from a lawsuit alleging wrongful disposition of a limited partnership's assets. The limited partnership, Metropolitan Water Company, L.P. (Met Water), acquires groundwater leases and sells the groundwater to Central Texas municipalities. William Scott Carlson owns and controls Met Water's general partner, Metropolitan Water Company of Texas, L.L.C. (Met Water GP), and another entity, Met Water Vista Ridge, L.P. (Vista Ridge). A group of Met Water's limited partners (collectively, Fox River) sued Carlson and his entities as "a single-business enterprise," claiming Carlson fraudulently misappropriated valuable groundwater leases and other Met Water assets, breached Met Water's limited partnership agreement, and violated fiduciary duties owed to the partnership. Fox River seeks damages in excess of $1 million in actual damages, exemplary damages, attorney's fees and expenses, and declaratory, injunctive, and other equitable relief.

Fox River filed the lawsuit in Washington County, where Carlson, Met Water GP, and Vista Ridge (collectively, Carlson) are domiciled. Carlson moved to transfer venue to Harris County, Texas, citing a venue-selection clause in the limited partnership agreement.[3] Section 15.020 of the Texas Civil Practice and Remedies Code requires enforcement of contractual venue provisions in

---

[3] Section 12.06 of the parties' contract provides: "Governing Law and Venue. This Agreement is to be governed and construed according to the laws of the State of Texas without regard to conflicts of law. The proper venue for resolution of any dispute related to this Agreement is only in Harris County, Texas."

2

certain circumstances that Fox River concedes are satisfied.[4] However, subsection (d) of that statute states, "This section does not apply to an action if . . . venue is established under a statute of this state *other than this title*."[5] Fox River opposed a venue transfer on the basis that section 65.023(a) of the Civil Practice and Remedies Code establishes Washington County as the proper venue. Section 65.023(a) is in a different title than section 15.020 and requires injunction suits to be heard in the defendant's county of domicile.[6]

The trial court granted Carlson's motion without substantive comment and transferred venue to Harris County. The court of appeals denied Fox River's petition for mandamus relief.[7]

Without considering whether section 65.023(a) applies, the court of appeals held section 15.020 governs based on our opinion in *In re Fisher*, which says "'the Legislature intended for it to control over other mandatory venue provisions.'"[8] The court therefore concluded section 15.020 required the trial court to enforce the venue-selection provision in the partnership agreement.[9]

On petition for mandamus to this Court, Fox River argues the court of appeals misconstrued and misapplied *Fisher* because that case involved a conflicting venue provision within the same title as section 15.020 and this one involves a mandatory venue provision in a different title. As to

---

[4] *See* TEX. CIV. PRAC. & REM. CODE § 15.020(a)–(c).

[5] *Id.* § 15.020(d) (emphasis added).

[6] *See id.* § 65.023(a).

[7] 577 S.W.3d 555, 558 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding).

[8] *Id.* (quoting *In re Fisher*, 433 S.W.3d 523, 534 (Tex. 2014) (orig. proceeding)).

[9] *Id.*

section 65.023(a)'s applicability, which the court of appeals did not reach, Fox River contends the underlying lawsuit is primarily a suit for injunctive relief because the request for injunctive relief is both genuine and necessary to ensure a complete remedy.

## II. Discussion

Venue refers to a "geographic location within the forum where [a] case may be tried."[10] Under Texas's legislatively enacted venue scheme, venue may be proper in many different locales.[11] Plaintiffs have the first choice in determining where to file a lawsuit, but when that choice is properly challenged, the trial court must transfer venue if the plaintiff fails to establish venue is maintainable in the county of suit.[12] Permissive and general venue statutes always yield to mandatory venue statutes.[13]

"Venue is a creature of legislative grace, and because a change of venue was unknown to the common law, the power to make venue changes is purely statutory."[14] Statutes governing venue are "structured in accord with a number of public policy principles" that reflect legislative choices

---

[10] *Cantu v. Howard S. Grossman, P.A.*, 251 S.W.3d 731, 734 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

[11] *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994).

[12] *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 15.001(b) (defining "proper venue" as "(1) the venue required by the mandatory provisions of Subchapter B [Mandatory Venue] or another statute prescribing mandatory venue; or (2) if Subdivision (1) does not apply, the venue provided by this subchapter [General Venue] or Subchapter C [Permissive Venue]").

[13] *See* TEX. CIV. PRAC. & REM. CODE §§ 15.001(b), .002(a).

[14] *Polaris Inv. Mgmt. Corp. v. Abascal*, 892 S.W.2d 860, 862 (Tex. 1995).

4

balancing the rights and interests at stake.[15] And "'when the Legislature has spoken on a subject, its determination is binding upon the courts unless the Legislature has exceeded its constitutional authority.'"[16] Accordingly, appellate review of venue rulings is generally limited to determining whether the trial court's ruling was faithful to the venue statute.[17]

In mandatory venue cases, mandamus relief is available without proof of an inadequate appellate remedy if the trial court clearly abused its discretion.[18] Trial courts have no discretion in determining what the law is or in the application of the law to the facts.[19] In this case, Fox River is entitled to mandamus relief only if (1) section 65.023(a) supersedes a valid and enforceable section 15.020 venue agreement and (2) section 65.023(a) actually applies because the relief Fox River seeks in the underlying suit is primarily injunctive.[20] These are questions of law we consider de novo.[21] The starting point is the proper construction of the venue statutes, which we ascertain using

---

[15] *See Fid. Union Life Ins. Co. v. Evans*, 477 S.W.2d 535, 537 (Tex. 1972); *Bonner v. Hearne*, 12 S.W. 242, 39-40 (Tex. 1889).

[16] *Polaris Inv.*, 892 S.W.2d at 862.

[17] *Id.*

[18] TEX. CIV. PRAC. & REM. CODE § 15.0642 (authorizing mandamus to enforce mandatory venue statutes); *In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 656 (Tex. 2005) (orig. proceeding) (proof of an inadequate appellate remedy is not a prerequisite to mandamus relief in mandatory venue cases).

[19] *Tex. Ass'n of Sch. Bds.*, 169 S.W.3d at 656.

[20] *In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding).

[21] *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *see In re Fisher*, 433 S.W.3d 523, 530 (Tex. 2014) (orig. proceeding) (using "a common-sense examination of the substance of the claims to determine whether the [venue] statute applies").

5

well-established statutory-construction principles and a plain-language approach.[22]  Unless we determine section 15.020 controls over all other venue provisions, we must then examine the substance of Fox River's claims using a commonsense analysis to determine whether the suit is primarily for injunctive relief.[23]

## A. Section 15.020: Venue-Selection Agreements

Venue provisions reside mainly, but not exclusively, in Title 2 of the Texas Civil Practice and Remedies Code.[24]  Section 15.020, a Title 2 venue provision, requires enforcement of a pre-litigation agreement fixing venue in "major transactions."[25]  Subject to exclusions not at issue here, a major transaction is "a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million."[26]  The parties agree the limited partnership agreement is a major transaction, the underlying dispute arises from that agreement, and the agreement provides for venue in Harris County.  Section 15.020 thus requires enforcement of the parties' venue agreement "[n]otwithstanding any other provision of this title [Title 2]," unless section 15.020 "does

---

[22] *See Shumake*, 199 S.W.3d at 284 ("When construing a statute, we begin with its language.  Our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen.").

[23] *See Fisher*, 433 S.W.3d at 530.

[24] Compare TEX. CIV. PRAC. & REM. CODE §§ 15.001–.100, *with, e.g.*, TEX. CIV. PRAC. & REM. CODE §§ 63.005, 65.023; TEX. ESTATES CODE §§ 33.001–.005; TEX. FAM. CODE §§ 6.302, 103.001; TEX. PROP. CODE §§ 115.002, 123.005.

[25] *See* TEX. CIV. PRAC. & REM. CODE § 15.020.

[26] *Id.* § 15.020(a).

not apply" for one of the reasons stated in subsection (d).[27]    Pertinent to this proceeding, subsection (d)(3) provides: "This section does not apply to an action if: . . . venue is established under a statute of this state *other than this title*."[28]

The dispute here is whether section 15.020 obviates the need to consider section 65.023(a)'s applicability because section 15.020 overrides all other mandatory venue provisions, including those outside of Title 2.  Applying section 15.020(d)(3)'s plain language, it does not.  Carlson's contrary argument—that section 15.020 is a "super mandatory" venue statute—rests on a misreading of our holding in *In re Fisher*.[29]

*Fisher* resolved a conflict between two mandatory venue provisions located in Title 2: (1) section 15.017, which applies in defamation suits, and (2) section 15.020, requiring enforcement of venue-selection agreements in major transactions.[30] We concluded section 15.020 prevailed based on the language in subsection (c) that a venue-selection agreement in a major transaction must be enforced "[n]otwithstanding any other provision of this title."[31]  We explained that this language "indicates that the Legislature intended for [section 15.020] to control over other mandatory venue provisions."[32]

---

[27] *Id.* § 15.020(a)–(c).

[28] *Id.* § 15.020(d)(3) (emphasis added).

[29] 433 S.W.3d 523 (Tex. 2014) (orig. proceeding).

[30] *Id.* at 533.

[31] *Id.* at 533-34 (citing TEX. CIV. PRAC. & REM. CODE § 15.020(c)).

[32] *Id.* at 534.

Carlson's argument that section 15.020 controls beyond Title 2 is contrary to the statute's text and is unsupported by a careful reading of *Fisher*. First, the express language of the statute says the opposite, and we are not free to rewrite or ignore statutory language. Second, even if we were authorized to alter the statute's text, we would not have expanded section 15.020's reach beyond Title 2 in a case that only involved conflicting mandatory venue provisions in Title 2. Finally, we did not cite, discuss, or analyze subsection (d) because we had no occasion to do so. Simply put, we cannot and did not convert section 15.020 into a "super mandatory" venue provision contrary to its express language.[33] But to the extent isolated language in *Fisher* has reasonably caused confusion, we clarify that section 15.020 means what it says and indicates that the Legislature intended for it to control over other venue provisions within Title 2.

Accordingly, notwithstanding section 15.020's admitted application to the facts of this case, we must consider whether "venue is established under a statute of this state other than [Title 2]."[34] Fox River relies on section 65.023(a) of the Texas Civil Practice and Remedies Code, a statute of this state found in Title 3, to support proper venue in Washington County where all of the defendants are domiciled.

### B. Section 65.023(a): Mandatory Venue for Injunction Suits

Subject to an exception not at issue here, section 65.023(a) provides that venue in the defendant's county of domicile is mandatory in an injunction suit: "[A] writ of injunction against

---

[33] We repeated *Fisher*'s language in *Perryman v. Spartan Texas Six Capital Partners, Ltd.*, which involved a different mandatory venue conflict that was also confined to Title 2. 546 S.W.3d 110, 133 (Tex. 2018). *Perryman* did not involve venue provisions from different titles and neither added to nor expounded on *Fisher*'s analysis. *See id.*

[34] TEX. CIV. PRAC. & REM. CODE § 15.020(d)(3).

a party who is a resident of this state shall be tried in a district or county court in the county in which the party is domiciled."[35] Recognizing the Legislature did not intend for the tail to wag the dog, we have held that section 65.023(a) is operative only when a plaintiff's pleadings in the underlying suit establish the relief sought is "purely or primarily injunctive."[36] In this context, "primary" necessarily means first in order of rank or importance.[37] The crux of this dispute is whether Fox River "primarily" seeks injunctive relief despite pleading for significant damages, attorney's fees, declaratory relief, and other equitable relief, including a constructive trust. Employing a commonsense examination of the substance of Fox River's claims for relief, we conclude Fox River's requests for injunctive relief are not the dominant purpose or central focus of the lawsuit.[38]

We first considered the injunction provision's application in *Brown v. Gulf Television Co.*[39] Brown, an airport owner, sought an injunction ordering Gulf Television Co. to remove a television antenna that was allegedly interfering with Brown's airport runway.[40] Alternatively, Brown sought an award of damages.[41] The venue dispute centered on whether section 65.023(a)'s materially

---

[35] *Id.* § 65.023(a); *see In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding) ("The statute placing venue for injunction suits in the county of the defendant's domicile is mandatory.").

[36] *Cont'l Airlines*, 988 S.W.2d at 736; *Ex parte Coffee*, 328 S.W.2d 283, 287 (Tex. 1959) (orig. proceeding) ("It is settled that [section 65.023(a)'s predecessor] only applies to and governs the issuance and return of writs and trial in cases in which the relief sought is purely or primarily injunctive.").

[37] *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1800 (2002); MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 923 (10th ed. 2000).

[38] *See In re Fisher*, 433 S.W.3d 523, 530 (Tex. 2014).

[39] 306 S.W.2d 706 (Tex. 1957).

[40] *Id.* at 706-07.

[41] *Id.* at 707.

indistinguishable predecessor controlled or whether venue was controlled by the situs of the real property in accordance with section 15.011's predecessor.[42] We held that the injunction statute controlled venue.[43]

Originating the standard we apply today, we held that only when a plaintiff's petition "discloses that the issuance of a perpetual injunction is the primary and principal relief sought" does section 65.023(a) prescribe mandatory venue.[44] However, "[w]henever it can properly be said from the pleadings that the issuance of an injunction is merely ancillary" to the primary relief sought, section 65.023(a) has no application.[45] After reviewing Brown's pleadings, we determined that because Brown primarily sought equitable injunctive relief, and only pleaded for damages in the alternative, the mandatory venue statute for injunction proceedings settled any conflict between the venue provisions.[46]

Decades later, we revisited the issue in *In re Continental Airlines, Inc.*[47] There, the dispute arose from a 1968 agreement between the City of Fort Worth and the City of Dallas concerning the Dallas-Fort Worth Airport (DFW).[48] The agreement restrained both cites from offering commercial

---

[42] *Id.* at 706, 708-09.

[43] *Id.* at 709.

[44] *Id.* at 708.

[45] *Id.*

[46] *Id.* at 708-09.

[47] 988 S.W.2d 733 (Tex. 1998) (orig. proceeding).

[48] *Id.* at 735.

flights out of local airports other than DFW.[49] In 1997, Congress passed the Shelby Amendment, placing the validity of the cities' agreement in question. Fort Worth filed a declaratory-judgment action in Tarrant County against Dallas and other related parties to determine the parties' respective rights under the agreement.[50] Continental Airlines then filed a declaratory-judgment action against both Fort Worth and Dallas in federal court, arguing federal law authorized the airline to offer interstate flights out of Dallas Love Field.[51] Fort Worth and Dallas responded by joining Continental to the Tarrant County action, prompting Continental to move for a venue transfer.[52] Continental argued section 65.023(a) mandated venue in Harris County, Continental's county of domicile.[53] The trial court denied the motion to transfer, and the court of appeals denied mandamus relief.[54]

We likewise denied Continental's extraordinary writ request, rejecting Continental's argument that the primary goal of Fort Worth's action, as against Continental, was to seek injunctive relief.[55] Noting Fort Worth had not pleaded for an injunction at all, we explained that "[t]he mere possibility" Fort Worth might later seek an injunction against Continental to enforce a declaratory judgment did not transform the suit into an injunction suit under section 65.023(a).[56] As in *Brown*,

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.* at 736-37.

[56] *Id.* at 736-37.

we recognized "venue statutes give plaintiffs some degree of choice over where to file their suit" and the Legislature's venue scheme "allows a plaintiff to control venue to a certain extent by deciding what relief to seek."[57] Because Fort Worth's "pleadings state[d] a justiciable controversy that may be fully resolved by declaratory judgment," we declined to "reform Fort Worth's requests for relief to reflect the relators' suspicions."[58] In other words, based on the pleadings, Fort Worth's lawsuit was not "purely or primarily" for a writ of injunction.[59]

Fox River argues its suit falls squarely within section 65.023(a)'s parameters for three reasons. First, the injunctive relief Fox River seeks is permanent, not temporary. Second, the requested injunctive relief would require Carlson to return "valuable and unique" assets wrongfully misappropriated from the partnership. And third, the overarching goal of Fox River's suit is to permanently remove Carlson as the general partner of Met Water LP and enjoin him from further acting on the partnership's behalf. Fox River contends the relief requested in its pleadings is analogous to the pleadings the Dallas Court of Appeals considered in *In re FPWP GP LLC* in determining section 65.023(a) established venue.[60]

---

[57] *Id.* at 737 (citing *Brown v. Gulf Television Co.*, 306 S.W.2d 706, 709 (Tex. 1957) ("The existence of a certain set of facts may entitle a litigant to a choice between legal and equitable remedies[, and] . . . where the plaintiff alleges that he has no adequate remedy at law and hence is entitled to and requests injunctive relief, it would seem that he chooses the equitable remedy as and for his primary relief.")).

[58] *Id.*

[59] *Id.* at 736-37.

[60] No. 05-16-01145-CV, 2017 WL 461355, at *1 (Tex. App.—Dallas Jan. 25, 2017, no pet.) (mem. op.).

There, like here, the dispute centered around a limited partnership.[61] The real parties filed a declaratory-judgment and injunction action in Dallas County to resolve a dispute among the partners concerning "(1) their rights in and obligations to the partnership, (2) which partnership agreement govern[ed] their relationship, and (3) which entity [was] the partnership's general partner."[62] Relying on section 65.023(a), the relators filed a motion to transfer venue from Dallas County to Harris County, as all parties subject to the potential injunction were domiciliaries of the latter.[63] The trial court denied the motion, but the court of appeals granted mandamus relief.[64]

After reviewing the pleadings, the appeals court determined the real parties' declaratory-judgment action and plea for an injunction were a different means to the same end.[65] The court noted that by seeking a declaratory judgment to restrict the current general partner from taking any further action and pleading for an injunction to help effectuate the declaratory relief, the claims were essentially two sides of the same coin.[66] As such, the court held that the real parties primarily sought injunctive relief and, under section 65.023(a), venue was mandatory in Harris County.[67]

---

[61] *Id.*

[62] *Id.*

[63] *Id.* at *2.

[64] *Id.* at *1.

[65] *Id.* at *5.

[66] *Id.*

[67] *Id.*

13

Carlson contends *FPWP* is distinguishable because the *FPWP* claimants only sought equitable and declaratory relief whereas Fox River seeks "a plethora of remedies other than injunctive relief, including damages." Carlson argues cases involving disputes seeking both monetary damages and injunctive relief are more on point than *FPWP*. We agree.

For example, in *In re Adan Volpe Properties, Ltd.*, the court of appeals examined whether the relators' claims of fraud, breach of fiduciary duty, conspiracy, defamation, libel, intentional infliction of emotional distress, invasion of privacy, and racketeering and pleas for damages and injunctive relief fell within section 65.023(a)'s scope.[68] The court concluded the injunctive relief sought was "ancillary or adjunctive to relators' causes of action for actual damages."[69] Likewise, Houston's intermediate appellate courts have reached similar conclusions in suits involving pleas for both substantial damages and injunctive relief.[70]

Examining Fox River's pleadings, the same is true here. Fox River unquestionably pleads for permanent injunctive relief but that is not the dominant purpose of the lawsuit. One of Fox River's pleas for injunctive relief seeks to prevent Carlson from taking any further action on Met Water's behalf, while another asks the court to compel Carlson to disgorge wrongfully appropriated partnership assets. Even so, considering Fox River's petition as a whole, we conclude that all the

---

[68] 306 S.W.3d 369, 372 (Tex. App.—Corpus Christi 2010, no pet.).

[69] *Id.* at 377.

[70] *See Shuttleworth v. G & A Outsourcing, Inc.*, No. 01-08-00650-CV, 2009 WL 277052, at *4 (Tex. App—Houston [1st Dist.] Feb. 5, 2009, no pet.) (mem. op.) ("[T]he pleadings reveal that G & A's requests for injunctive relief were merely ancillary to its suit for damages against Shuttleworth and his employers."); *Hogg v. Prof'l Pathology Assocs., P.A.*, 598 S.W.2d 328, 330 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ dism'd) ("We conclude that the damage claim is the remedy of first importance sought by PPA in the suit against Hogg, that the relief sought is not primarily injunctive, and consequently [section 65.023(a)'s predecessor] does not apply.").

injunctive relief Fox River seeks is ancillary to its primary goal of (1) removing Carlson as Met Water's general partner in accordance with the Texas Business Organizations Code and (2) recovering monetary damages.

As to the first point, we note Fox River seeks Carlson's permanent removal as Met Water's general partner under section 152.501(b) of the Business Organizations Code. But Fox River also seeks an injunction to permanently prohibit Carlson from taking any further action on behalf of the partnership. Removal is the principal relief and enjoining him from further acting is, quite clearly, secondary to the statutory removal remedy. Considering the claims together, enjoining Carlson from further acting on the partnership's behalf is merely ancillary to the primary goal of unseating Carlson from general-partner status.

Fox River's plea for an injunction requiring disgorgement of all wrongfully acquired assets is not predominantly remedial to the bulk of the claims Fox River has asserted or the wrongs it has alleged. Fox River claims Carlson engaged in fraud, malfeasance, negligence, gross negligence, conspiracy, and conversion. In addition to seeking return of assets, Fox River seeks actual damages in excess of $1 million and exemplary damages, declaratory relief, and a constructive trust. Even a cursory review of the pleadings reveals injunctive relief to be an accessory, not central, focus of the claims for relief. Fox River's pleas for injunctive relief are not merely a contrivance to secure a particular venue, but a bona fide request for relief is not the equivalent of a primary request for relief.

Considering the allegations and claims for relief in their entirety, we hold that (1) section 65.023(a) does not establish venue, (2) the limitation in section 15.020(d)(3) does not apply, and (3) the trial court properly transferred the case to Harris County, the parties' agreed venue.

### III. Conclusion

Section 15.020 requires enforcement of the parties' venue-selection agreement not because it is a "super mandatory" venue provision that supersedes section 65.023(a), but because section 65.023(a) does not apply in suits like this where injunctive relief is not the primary and principal relief requested. Because the trial court did not abuse its discretion in transferring the case to the parties' agreed venue, we deny Fox River's petition for mandamus relief.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** January 31, 2020